UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
A.W.S., a minor, by and through his
Parents, and individually, KAYLA
LOOKING HORSE, and JONATHAN K.
SMITH,

                                Plaintiffs,

           -against-


SOUTHAMPTON UNION FREE
SCHOOL DISTRICT,

                              Defendant.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19-CV-0889 (DRH) (ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Hurley, are several motions by A.W.S.,

a minor, by and through his Parents, and individually, Kayla Looking Horse, and Jonathan K.

Smith ("Plaintiffs"). Specifically, Plaintiffs have filed a motion to strike Defendant's

Affirmative Defenses, ECF No. 77, and a renewed motion for an order pursuant to Rule

37(c)(1)(B) and (C) of the Federal Rules of Civil Procedure ("Rules"), striking the Answer of the

Defendant, or in the alternative for an adverse inference jury instruction be given that negligence

may be inferred from the Defendant's spoliation of video evidence, and exclusion of Defendant's

video evidence, ECF No. 78. Additionally, Plaintiffs have filed an April 15, 2021 Letter Motion

for leave to file Exhibits in Support of Plaintiffs' renewed motion to strike or in the alternative

for an adverse inference, ECF No. 93. Defendant, Southampton Union Free School District

("Defendant") opposes each of the motions. ECF Nos.77, 81, 94. For the reasons set forth

below, Plaintiffs' April 15, 2021 Motion for leave to file Exhibits in Support of Plaintiffs'

renewed motion to strike or in the alternative for an adverse inference is granted, and the

undersigned respectfully recommends that Plaintiffs' motion to strike Defendant's affirmative defenses and Plaintiffs' Motion to strike the answer for spoliation be denied.

**BACKGROUND**

The Court presumes familiarity with the facts and procedural history of this case and only includes those facts that are necessary for resolution the instant motion.

According to Plaintiffs, this action arises out of an incident that occurred on January 31, 2018 when Plaintiffs allege that minor A.W.S. sustained a "grievous head injury…on playground equipment during [his] First Grade recess period on January 31, 2018." Compl. ¶ 1. Plaintiffs assert twelve causes of action, including five negligence claims based upon New York common law (Counts I-V); violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, complaining that Plaintiff AW was the victim of discrimination based on his origin as a Native American (Count VI); violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Count VII); violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., (Count VIII); violation of the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., (Count IX); violation of New York's Dignity for All Students Act ("DASA"), L.2010, ch. 482, § 2, New York Education Law § 10 et seq. (Count X); breach of the Native American Tuition Agreement (Count XI), and violations the New York Freedom of Information Law (Count XII).

By letter motion dated November 13, 2019, Plaintiffs objected to the video produced by Defendants as part of its initial disclosures, arguing that if "the Defendant has no more camera footage, it means Defendant failed to preserve all video evidence in violation of Plaintiffs' hold letter and its own video retention policy, and spoliation of critical evidence has occurred – In this event, Plaintiffs would request Defendant's Answer be stricken and/or a jury instruction be given

that negligence may be inferred from the spoliation of video evidence." ECF No. 29. Defendant responded that this November 2019 letter was the first time Plaintiffs had objected to the video produced and arguing that "Plaintiffs claim that the video footage disclosed by Defendant was edited, but offers only conclusory statements by counsel rather than evidence. There are several possible reasons that the time stamp does not match the run time of the footage." ECF No. 30. Defendant further argued that "Plaintiffs take issue that the disclosed video footage starts 27 minutes before 1st grade recess started on 1/31/2018 and ends 3 minutes after 1st grade recess started on 1/31/2018. Although first grade recess on 1/31/2018 was held from 11:30am to 11:50am, the video footage still shows the snow covered playground for the first 3 minutes of the subject recess period." *Id.* The undersigned conducted a hearing on Plaintiffs' motion on January 14, 2020, *inter alia*, denying Plaintiffs' motion for spoliation because Plaintiffs failed to present evidence contradicting Defendant's representation that that outside recess did not occur, or that the video produced was all that existed. ECF No. 36.

On April 28, 2020, Judge Hurley issued an order overruling Plaintiffs' objection that this Court lack authority to rule on discovery motions and directing Defendants to "provide an affidavit from someone with first-hand knowledge of the situation explaining in detail why the video footage provided spans only three minutes and twenty-five seconds as distinct from the thirty minutes of the video's represented run time and why it does not fully encompass the recess period from 11:30 am to 11:50 am." Judge Hurley did not rule on Plaintiffs' motion to strike the Defendant's answer and/or give an adverse inference jury instruction.

In response to the Order, the Defendant provided an affidavit to Plaintiffs by Mark J. Hannan, Director of Security for Defendant, dated May 27, 2020. ECF No. 80-2. Mr. Hannan stated that he "was familiar with the video surveillance system at Southampton Elementary

School playground on January 31, 2018" and that "[o]n or about March 14, 2018, I was informed of an alleged accident that happened at the Southampton Elementary School playground on January 31, 2018 from 11:10am to 11:30am." *Id*. at ¶¶ 2,3.  He added that "[w]hen I viewed the video footage, I saw that there was no outdoor recess and that the playground was covered with snow. I preserved the video footage for January 31, 2018 from 11:03 to 11:33 am. I recorded the video footage as it existed on the video surveillance system. I did not make any edits or alter it in any manner. It is unknown to me how the video recording system could be manipulated or edited as the recording takes place." *Id*. at ¶ 6.  Mr. Hannan explains "I was not asked to review or preserve video footage for January 31, 2018 from 11:33 am to 11:50 am." *Id*. at ¶ 7.  Mr. Hannan further explains that the reason for the difference between the video footage and video run time is because "[i]t is my experience and understanding that any such discrepancy is because the recording function on the surveillance system was not constant, but instead was motion activated." *Id*. at ¶ 8.

On October 22, 2020, Defendant filed a letter requesting permission to move, pursuant to Fed. R. Civ. P. Rule 56, for summary judgment dismissing Plaintiff's Complaint in its entirety. ECF No. 58.  Plaintiffs opposed that request.  On October 23, 2020, Plaintiffs filed a letter motion requesting permission to make a renewed motion to strike the answer of the Defendant, or in the alternative, for a jury instruction that negligence may be inferred from the spoliation of video evidence.  ECF No. 61.  Additionally, Plaintiffs requested permission to file a motion to strike Defendant's affirmative defenses.  ECF No. 60.  Defendant opposed both requests.  On November 2, 2020, Plaintiffs filed a letter request seeking permission to file an anticipated Rule 56 motion for partial summary judgment as to liability on Counts I, II, and IV.  ECF No. 66. Defendant opposed that request.  On November 11, 2020, Judge Hurley ruled that "[i]n the

interests of judicial efficiency, the Court refers the Plaintiffs' letter requests for pre-motion conferences on anticipated motions to strike, 60 and 61, to Magistrate Judge Lindsay for a decision on Plaintiffs' requests and, if granted, for a decision on the motion(s).  The Court will hold in abeyance its decision on the parties' request for pre-motion conferences on anticipated Rule 56 summary judgment motions, 58 and 66 , until Magistrate Judge Lindsay issues her decision(s) on the referred matter."

By Order dated December 29, 2020, this Court waived the requirement of a pre-motion conference and set a briefing schedule on Plaintiffs' motions.  Both motions were filed on March 17, 2021. ECF Nos. 77, 78.

## DISCUSSION

### A.  Motion to Strike Affirmative Defenses

Plaintiffs move the strike each of the affirmative defenses asserted by Defendant pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  ECF No. 77.  Rule 12(f), provides, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f).  "Although courts are given discretion to resolve Rule 12(f) motions, as a general rule motions to strike affirmative defenses are 'disfavored and should not be granted unless there are strong reasons for doing so.'" *Perez v. De Domenico Pizza & Rest. Inc*., 14-cv-7236 (LDW) (ARL), 2016 U.S. Dist. LEXIS 72922, 2016 WL 3774389, at *1 (E.D.N.Y. May 31, 2016).  "In order for a court to strike a defense as insufficient: '(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion

of the defense.'" *Id.*; *see also Arch Ins. Co. v. Sky Materials Corp.*, No. 17-cv-2829, 2019 U.S. Dist. LEXIS 49373, at *4, 2019 WL 1316950, at *2 (E.D.N.Y. Mar. 22, 2019).  Accordingly, even if the defense is factually insufficient, the court must still determine whether its inclusion would prejudice the plaintiffs.  *Id.* "Absent a showing of prejudice, an affirmative defense need not be stricken."  *Resolution Trust Corp. v. Gregor*, No. 94 CV 2578, 1995 U.S. Dist. LEXIS 22032, 1995 WL 931093, *3 (E.D.N.Y. Sept. 29, 1995).  Plaintiff bears the burden of establishing each of these three elements.  *S.E.C. v. PacketPort.com*, No. 05 CV 1747, 2006 U.S. Dist. LEXIS 73638, at *8, 2006 WL 2798804 (D. Conn. Sept. 27, 2006) (citing *SEC v. McCaskey*, 56 F.Supp.2d 323, 326 (S.D.N.Y. 1999)).

Here, as an initial matter, Plaintiffs' motion is untimely.  Defendant's answer was filed on April 1, 2019.  ECF No. 13.  Plaintiffs' motion to strike was not filed until March 17, 2021, ECF No. 77, which is well beyond the 21-day time limit imposed by Rule 12.  *See, e.g.*, *Graham v State Univ. of NY at Albany*, Civ. No. 1:17-CV-1092 (TJM/DJS), 2020 US Dist LEXIS 39061, 2020 WL 1074114 (N.D.N.Y. Mar. 6, 2020); *D.W.M. by Moore v. St. Mary Sch.*, 2:18-cv-3099 (DRH)(GRB), 2019 U.S. Dist. LEXIS 145583, 2019 WL 4038410, at *4 n.2 (E.D.N.Y. Aug. 27, 2019); *Friedman v. Geico Gen. Ins. Co.*, 14-cv-00537(AMD)(MDG), 2017 U.S. Dist. LEXIS 6317, 2017 WL 10109879, at *3 (E.D.N.Y. Jan. 13, 2017); *Feitshans v. Kahn*, 06 Civ. 2125 (SAS), 2007 U.S. Dist. LEXIS 24693, 2007 WL 998400, at *2 (S.D.N.Y. Apr. 2, 2007) (all denying motions to strike as untimely).  Plaintiffs' response is that "[t]he 21 day limitation raised by Defendant is not hard and fast."  Pl. Mem. at 1. However, in the single case cited by Plaintiffs to support this assertion, the motion was filed within 25-days of the filing of the answer, and, this issue of timeliness was not addressed by the Court.  Here, Plaintiffs' motion was filed 716 days after the filing of the answer, and Plaintiffs have offered no explanation for the delay.

Nevertheless, Plaintiffs' motion should be denied.  Plaintiffs' motion is overly broad in that it seeks to strike all of the affirmative defenses raised in the Answer without the slightest discussion of any burden faced by Plaintiffs because of the inclusion of the affirmative defense. Even a cursory review of the answer demonstrates that certain of the asserted defenses would easily withstand scrutiny un Rule 12(f).  Defendant, for example, asserts defenses that the Complaint fails to state a claim, that Plaintiffs have failed to state a claim for punitive damages and that Plaintiffs have failed to state a state law claim. ECF No. 13 at ¶¶ 55, 52 & 54.  Plaintiffs seek to strike each of these affirmative defenses.  However, "it is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer." *McCaffery v. McCaffery,* No. 11-CV-703, 2012 U.S. Dist. LEXIS 111651, 2012 WL 3260299, at *6 (E.D.N.Y. Aug. 8, 2012) (internal quotation marks omitted); *Erickson Beamon Ltd. v. CMG Worldwide, Inc*., No. 12-CV-5105, 2014 U.S. Dist. LEXIS 112437, 2014 WL 3950897, *4 (S.D.N.Y. Aug.13, 2014) (same).  "Several courts have found that 'a failure-to-state-a-claim defense is not vulnerable to motions to strike because the defense is analogous to a general denial and its inclusion, although likely redundant, does not prejudice plaintiffs.'" *Graham v State Univ. of NY at Albany*, Civ. No. 1:17-CV-1092 (TJM/DJS), 2020 US Dist LEXIS 39061 (quoting *Coach, Inc. v. Kmart Corps*., 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010) (citing cases)).

"Absent a compelling explanation of why there is no question of fact or law that might allow these defenses to succeed, coupled with an explanation of why the plaintiff will be prejudiced by their inclusion, the plaintiff has failed to meet his burden under Rule 12(f)." *Perdum v. Forest City Ratner Cos*., No. CV 11-315 (PKC) (VVP), 2014 U.S. Dist. LEXIS 204173,  (E.D.N.Y. May 30, 2014).  Here, Plaintiffs have stated only that "Defendant seems to confuse denials, more appropriately belong in response paragraphs in  accordance with Rule 8(b)(2) . . .with affirmative

defenses under Rule 8(c)(1)" Pl. Mem. at 8, ECF No. 77.  This is not enough to meet Plaintiffs'

burden.   Accordingly, the undersigned respectfully recommends Plaintiffs' motion to strike

Defendant's affirmative defenses be denied.

B.  **Plaintiffs' Motion To Strike for Spoliation**

Plaintiffs have also moved pursuant to Rule 37(c)(1)(B) and (C) for an order striking the

answer of Defendant, or in the alternative for an adverse inference jury instruction be given that

negligence may be inferred from the Defendant's spoliation of video evidence, and exclusion of

Defendant's video evidence, as well as court costs and reasonable attorney fees.   ECF No. 79.

According to Plaintiffs, Defendant failed to preserve the full and complete playground video for

the recess period for A.W.S at the Southampton Elementary School playground on January 31,

2018 for the time period 11:30 am to 11:50 am, and Defendant has failed to credibly explain the

missing video footage as directed by the Court in its Order of April 28, 2020.

Plaintiffs contend that pursuant to Fed. R. Civ. P. 37(b) and the court's inherent powers, a federal

court may impose sanctions when a party spoliates evidence.  *See Residential Funding Corp. v. DeGeorge*

*Fin. Corp.,* 306 F.3d 99, 106-07 (2d Cir. 2002); *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779

(2d Cir. 1999).  "Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West,*

167 F.3d at 779.  The court has broad discretion in crafting an appropriate sanction for spoliation.  *Id.*

*(*citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998).  Plaintiffs contend that the Court may

issue sanctions for spoliation of this video evidence based on the court's inherent authority to impose

sanctions, instead of under Rule 37.  Pl. Mem. at  3; Pl. Reply Mem. at 7.  However, "[t]he 2015

Amendment to Rule 37(e) 'forecloses reliance on inherent authority or state law to determine when

certain measures should be used.' Advisory Comm. Notes, 2015 Amendment. Rather, the sanctions

authorized by Rule 37(e)(2) are only available when a court finds that the threshold requirements have

been met." *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 U.S. Dist. LEXIS 55199, 2019 WL

1434051, at *7 (E.D.N.Y. Mar. 30, 2019).

"[A]s the law currently exists in the Second Circuit, there are separate legal analyses governing the spoliation of tangible evidence versus electronic evidence." *Best Payphones, Inc. v. City of New York,* No. 01-CV-3924, 2016 U.S. Dist. LEXIS 25655, 2016 WL 792396, at *3 (E.D.N.Y. Feb. 26, 2016), aff'd as modified sub nom. *Best Payphones, Inc. v. Dobrin,* 409 F. Supp. 3d 130 (E.D.N.Y. 2018). Pursuant to Rule 37(e), which was significantly amended in 2015:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e); *Ungar v. City of New York*, 329 F.R.D. 8 (E.D.N.Y. 2018) (applying Rule 37(e) to a motion for sanctions involving electronically stored video surveillance footage). This rule "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." *McIntosh v. United States*, No. 14-CV-7889, 2016 U.S. Dist. LEXIS 44290, 2016 WL 1274585, at *31 (S.D.N.Y. Mar. 31, 2016) (internal quotation omitted). "The amended Rule 37(e) makes it more difficult for a moving party to obtain sanctions for spoliation of ESI requiring, at minimum, that the court find prejudice, and, in order to impose more extreme sanctions, that it find an intent to deprive." *Lokai Holdings, LLC v. Twin Tiger*

*USA LLC,* No. 15-CV-9363, 2018 U.S. Dist. LEXIS 46578, 2018 WL 1512055, at *8 (S.D.N.Y.

Mar. 12, 2018).

> "As amended, therefore, Rule 37(e) requires 'a three-part inquiry':
>
> The first is to decide if the rule applies at all — that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider — regardless of prejudice to any other party — is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Karsch v. Blink Health Ltd.,* No. 17 Civ. 3880 (VM) (BCM), 2019 U.S. Dist. LEXIS 106971,

2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne,* 602 B.R. 429 (D.

Conn. 2019). "As the party seeking spoliation sanctions, Plaintiffs have 'the burden of

establishing the elements of a spoliation claim by a preponderance of the evidence.'" *CBF*

*Industria De Gusa S/A v. AMCI Holdings, Inc.,* No. 13-CV-2581 (PKC) (JLC), 2021 U.S. Dist.

LEXIS 174989, 2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021) (quoting *Doubleline Capital LP v.*

*Odebrecht Fin., Ltd.,* No. 17-CV-4576 (GHW) (BCM), 2021 U.S. Dist. LEXIS 60959, 2021 WL

1191527, at *5 (S.D.N.Y. Mar. 30, 2021)).[1]

## 1. Duty to Preserve

"The duty to preserve electronically stored information imposed by Rule 37(e) is based

on the common law duty 'to preserve relevant information when litigation is reasonably

---

[1] In their reply Memorandum, Plaintiffs mistakenly contend that the burden with respect to Plaintiffs' claim of spoliation rests on Defendant as a result of Judge Hurley's April 2020 Order. Judge Hurley's Order did not address the burden of proof on Plaintiffs' motion, the Order requires Defendant to explain why there was only three minutes of video on a 30-minute segment from 11:03 a.m. -11:30 a.m. and to explain the destruction of the video for the period 11:30 a.m. -11:50 a.m., which it has.

foreseeable.'" *Resnik v. Coulson*, 17-CV-676 (PKC)(SMG), 2019 U.S. Dist. LEXIS 92159, 2019 WL 2256762, at *6 (E.D.N.Y. Jan. 4, 2019) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment); *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("the obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation"). "Pursuant to this obligation, 'anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary.'" *Estate of Jackson v. County of Suffolk*, No. 12-1455 (JFB)(AKT), 2014 U.S. Dist. LEXIS 46521, 2014 WL 1342957, at *9 (E.D.N.Y. Mar. 31, 2014) (quoting *Zubulake*, 220 F.R.D. at 217). In this context, "'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Orbit One Commc'ns v. Numerex Corp.,* 271 F.R.D. 429, 436-37 (S.D.N.Y. 2010) (collecting cases). A litigant thus "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, [or] is reasonably likely to be requested during discovery." *Zubulake*, 220 F.R.D. at 217 (quoting *Turner v. Hudson Transit Lines, Inc*., 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).

Defendant's duty to preserve in this action arose, at the very latest on March 5, 2018, when Defendant received counsel's letter regarding the potential filing of the complaint arising from the alleged accident on the playground on January 31, 2018. The letter, however, identified the relevant period as 11:10 a.m. – 11:30 a.m. ECF No. 85. Indeed, the director of security was made aware of Plaintiffs' request and took steps to preserve a portion of the video from that period. ECF 89-3.

Plaintiffs now claim that Defendant had a duty to preserve the "video for the full and

11

complete recess period for AWS on January 31, 2018, which, known by the Defendant, was from 11:30 am to 11:50 am." Pl. Mem. at 3. Plaintiffs offer no support for this conclusion. Defendant argues that because Defendant was unaware of an accident on the playground until Plaintiffs' letter of March 5, 2018 which referred specifically to the time period of 11:10 until 11:30 it had no duty to preserve video beyond the time period requested. Defendant notes that according to (1) Plaintiffs' Litigation Hold Letter dated March 5, 2018, the "recess time period of the injury was approximately between 11:10-11:30am," (2) Plaintiffs' Claim Letter dated March 27, 2018, the "recess time period of the injury was approximately between 11:10-11:30am," and (3) Plaintiffs' Complaint dated February 14, 2019, the accident took place at "approximately 11:10-11:30am." Additionally, Defendant argues that in Plaintiffs' First Request for Admissions dated June 10, 2019, Plaintiffs request multiple admissions related to 11:10-11:30am. Defendant contends that Plaintiffs have failed to establish when Defendants' obligation to preserve the video for the period 11:30-11:50 arose, and thus, Plaintiffs have failed to show that Defendant became aware that the 11:30-11:50 time period was relevant to this litigation before the video evidence for that time period became unavailable. The Court agrees.

In general, "there is no doubt that a video depicting the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred." *Essenter*, 2011 U.S. Dist. LEXIS 3905, 2011 WL 124505, at *7. Here, however, in light of Plaintiffs' repeated representations regarding the relevant period, the Court is reluctant to penalize Defendant for failing to preserve video before and after the time period requested.[2]

---

[2] Plaintiffs claim that Defendant has failed to provide an adequate explanation for the three minutes of video captured for the period 11:03 through 11:30 also must fail. According to Plaintiffs "Mr. Hannon does not credibly explain or respond to the Court's Order because his explanation that video footage was missing because the school video was "motion activated" flatly contradicts both the Defendant's official video policy and Superintendent Dyno's reassuring email to parents about the District's use of "live stream" video." However, Defendant offers testimony that "[t]he surveillance cameras at Southampton Elementary School had live video-streaming capabilities. The terms "live video streaming" or "live feeds" does not mean that video footage is being constantly viewed or

### 2. **Prejudice from the Loss of the Evidence**

The Court must next consider whether Plaintiffs have been prejudiced by the spoliation, in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The moving party "bears the burden of showing that there is a 'likelihood that the destroyed evidence would have been of the nature alleged.'" *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 444 (S.D.N.Y. 2007) (quoting *Kronisch*, 150 F.3d at 127).

Here, Plaintiffs do not assert any specific prejudice suffered because of the destruction of the video for the period of 11:30- 11:50. The closet Plaintiffs come to a description of potential prejudice is Plaintiffs' claim that sanctions are necessary "to shift the risk of an erroneous judgment on the Defendant, and restore Plaintiffs' position in litigation." Pl. Reply at 7. "Where evidence is destroyed in bad faith, the spoliator's intentional destruction of the evidence supports an inference that the evidence was relevant." *Gutierrez-Bonilla v. Target Corp.*, No. 08-CV-3985 (JS) (AKT), 2009 U.S. Dist. LEXIS 116958, 2009 WL 5062116, at *4 (E.D.N.Y. Dec. 16, 2009) (citing Port Auth. Police Asian Jade Soc'y, 601 F. Supp. 2d at 570 (citing Residential Funding, 306 F.3d at 109)). However, "[w]here the spoliation is done with negligence, whether sanctions are warranted depends upon the circumstances of the case." *Id.* (citing *Residential Funding*, 306 F.3d at 108; *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)). If the spoliator's state of mind is insufficient to show that the missing evidence was favorable to the moving party, the moving party may submit other proof tending to demonstrate that the missing evidence would have been favorable to it. *See In re WRT*, 246 F.R.D. at 198.

---

monitored or acted upon." ECF No. 89, Hannan Aff. ¶¶5-7. Plaintiffs have offered no evidence in contradiction to Mr. Hannon's affidavit.

Plaintiffs have failed to provide evidence that that Defendant acted with an intent to deceive, which is discussed in greater detail below, and therefore Plaintiffs are required to submit some proof that the missing evidence is favorable to Plaintiffs.  Plaintiffs have failed to do so. Defendant, on the other hand, has provided testimony from Howard Altschule, Certified Consulting Meteorologist, with regard to the weather conditions that existed on January 31, 2018 between 11:30am to 11:50am. in further support of its position that outdoor recess did not take place on January 31, 2018.  ECF Nos. 83, 84.

Here, to establish a prima facie case, Plaintiffs must prove that A.W.S. was injured on the playground outside on January 31, 2018.  Defendant has taken the position that there was no outdoor resource on that date.  Thus, Plaintiffs now seek video footage showing the playground during the recess period of A.W.S.  It is undisputed that if Defendant's video surveillance from January 31, 2018 showed Plaintiff's accident, such footage would be relevant (and indeed, very important) to Plaintiff's case.  It would be equally important to Defendant's case if Defendant were able to show that no children were on the playground between 11:30 a.m. and 11:50 a.m. However, as discussed above, in the face of sworn testimony, unrefuted by Plaintiffs, that there was no outdoor recess on January 31, 2018, coupled with the video for the first three minutes of the time period and the unrefuted testimony of Defendant's metrological expert the Court cannot conclude that Plaintiffs have demonstrated that they are prejudiced by the missing footage.

3**. Culpable State of Mind**

Finally, in order to for this Court to recommend the sanctions sought by Plaintiffs, i.e., the striking of Defendant's answer or the instruction of an adverse inference, Plaintiffs must also show that Defendant destroyed the video with a culpable state of mind.  "Even where the preservation obligation has been breached, sanctions will only be warranted if the party

14

responsible for the loss had a sufficiently culpable state of mind*." In re WRT, 246 F.R.D.* at 195 (citations omitted). "Now, under Rule 37(e) (and as applied to electronic evidence only), a court may not issue an adverse inference instruction, or any harsher remedy, unless the Court finds 'that the party acted with the intent to deprive another party of the information's use in the litigation.'" *Best Payphones*, 2016 U.S. Dist. LEXIS 25655, 2016 WL 792396, at *4 (quoting Fed. R. Civ. P. 37(e)(2)).[3]  Additionally, Rule 37(e) only permits a Court to order curative measures or sanctions if information is "lost" because a party "failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Id*. (quoting Fed. R. Civ. P. 37(e)). "It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive." <u>Karsch</u>, 2019 U.S. Dist. LEXIS 106971, 2019 WL 2708125, at *21 (quoting *Rhoda v. Rhoda*, No. 14-CV-6740 (CM), 2017 U.S. Dist. LEXIS 165493, 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017)); *see also Doubleline Cap. LP v. Odebrecht Fin., Ltd.,* No. 17 Civ. 4576 (GHW) (BCM), 2021 U.S. Dist. LEXIS 60959, 2021 WL 1191527, at *9 (S.D.N.Y. Mar. 30, 2021).

An intent to deprive can be found either from a conscious act of destruction or a "conscious dereliction of a known duty to preserve electronic data." *Ungar*, 329 F.R.D. at 13. "The intent standard is both stringent and specific: '[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence.'" *Mule v. 3-D Bldg. & Constr. Mgmt. Corp*., No. CV 18-1997 (JS) (AKT), 2021 U.S. Dist. LEXIS 124711, 2021 WL 2788432, at *6 (E.D.N.Y. July 2, 2021) (quoting *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.,* 337 F.R.D. 47, 2020 WL 5849096, at *2 (S.D.N.Y. 2020) (citing *Leidig,* 2017 U.S. Dist. LEXIS 208756, 2017 WL

---

[3] *Slovin v. Target Corp., Inc*., 2013 WL 840865 (S.D.N.Y. Mar. 7, 2013), relied upon by Plaintiffs, was decided before the rules changes in 2015 and thus is inapplicable to the ESI at issue here.

6512353, at *11 (holding that although plaintiff intended to "disable his websites" and delete certain email files, he did not do so for the purpose of depriving defendants of the use of the ESI in litigation and therefore could not be sanctioned under subsection (e)(2))).

In *Stanbro v. Westchester Cty. Health Care Corp.*, No. 19-CIV-10857 KMK JCM, 2021 U.S. Dist. LEXIS 163849, 2021 WL 3863396, at *6 (S.D.N.Y. Aug. 27, 2021), the Court determined that "upon an independent review of the record, that there is no direct or circumstantial evidence that [defendants] had the requisite intent to warrant an adverse-inference instruction under Rule 37(e)(2). While [defendants] inability to explain what happened to the Video is troubling, the Court cannot conclude on the instant record that the Video's absence is the result of an intent to deprive. Such a finding would be mere surmise and conjecture." *Id.* Similarly, here, Plaintiffs have not presented any evidence suggesting that the video was intentionally destroyed, despite having the burden to do so.  Rather, Plaintiffs maintain that Judge Hurley's Order of April 2020 placed the burden on Defendant to provide answers.  Indeed, Judge Hurley's Order required Defendant to "provide an affidavit from someone with first-hand knowledge of the situation explaining in detail why the video footage provided spans only three minutes and twenty-five seconds as distinct from the thirty minutes of the video's represented run time and why it does not fully encompass the recess period from 11:30 am to 11:50 am." Defendant complied with Judge Hurley's order by providing an affidavit of Mark J. Hannan, Director of Security for Defendant, dated May 27, 2020.  ECF No. 80-2.  Judge Hurley's Order, however, did not shift the burden of demonstrating an intent to destroy the video to Defendant.

In his affidavit, Mr. Hannan states that he "was familiar with the video surveillance system at Southampton Elementary School playground on January 31, 2018" and that "[o]n or about March 14, 2018, I was informed of an alleged accident that happened at the Southampton

Elementary School playground on January 31, 2018 from 11:10am to 11:30am." *Id*. at ¶¶ 2,3. He added that "[w]hen I viewed the video footage, I saw that there was no outdoor recess and that the playground was covered with snow. I preserved the video footage for January 31, 2018 from 11:03 to 11:33 am. I recorded the video footage as it existed on the video surveillance system. I did not make any edits or alter it in any manner. It is unknown to me how the video recording system could be manipulated or edited as the recording takes place." *Id*. at ¶ 6. Mr. Hannan explains "I was not asked to review or preserve video footage for January 31, 2018 from 11:33 am to 11:50 am." *Id*. at ¶ 7. Mr. Hannan further explains that the reason for the difference between the video footage and video run time is because "[i]t is my experience and understanding that any such discrepancy is because the recording function on the surveillance system was not constant, but instead was motion activated." *Id*. at ¶ 8. In a later affidavit, submitted in opposition to Plaintiffs' motion for sanctions, Mr. Hannan testifies that "[t]he video footage that would have showed the playground equipment at Southampton Elementary School on January 31, 2018 from 11 :30-11 :50am was maintained in accordance with District policies. This video footage was not intentionally destroyed and was not destroyed with the intent to deprive any person's access to the footage. This video footage was not available due to the regular course of retention protocols set by the District." ECF No. 89, Affidavit of Mark Hannan, dated March 1, 2021, ¶ 20. He further testified that "[a]s of March 14, 2018, there was no need to review the video footage from other times on January 31, 2018 when I preserved the video footage from 11:03- 11 :33am because there was visible snow covering the area of the playground equipment. Based on my experiences, if there was snow covering the playground area between 11:10-11 :30am, the same conditions would exist between 11 :30-11 :50am. Further, as of March 14, 2018, the only time period of interest identified by Plaintiffs was 11

:10-11 :30am." *Id.* at ¶ 21.

In a belated effort to provide evidence of intent to destroy on the part of Defendant, Plaintiffs have sought "leave to file and add the following proposed additional exhibits, 10 and 11 containing newly disclosed email evidence, germane to the above motion. (attached as proposed exhibits and redacted by Plaintiffs).  ECF No. 93.  According to Plaintiffs, two emails from Eileen Noonan, Secretary to Asst. Superintendent for Business District Treasurer, indicating that Mr. Hannan had been asked to preserve video for January 31, 2018, support Plaintiffs' claim that Defendant intentionally destroyed video from January 31, 2018.  Defendant "objects to the arguments proffered by Plaintiffs in connection with the proposed exhibits . . . because Plaintiffs should not be permitted to speculate about the meaning or subtext of Ms. Noonan's emails. Further, despite Plaintiffs' arguments, there is simply no evidence that the emails mean what Plaintiffs claim they do. Moreover, Defendant objects to the submission of the proposed additional exhibits based on principals of hearsay and lack of authentication. Lastly, on their face, there is nothing inconsistent between Ms. Noonan's emails and Mr. Hannan's affidavits."  ECF No. 94.  Defendant requested, that in the event the Court were to grant the motion, "that the Court set a briefing schedule for the submission of memorandum of law and supplemental affirmations with supporting evidence" in opposition to these newly added exhibits.  The Court grants Plaintiffs motion to submit these two exhibits and rejects Defendant's request for additional briefing.  These two additional exhibits do not provide circumstantial evidence of intent and do nothing more than bolster Defendant's position that the video as requested by Plaintiffs was preserved.

Accordingly, in light of Plaintiffs' failure to satisfy any of the three elements necessary to support the sanctions for spoliation. The undersigned respectfully recommends that Plaintiffs'

motion to strike the Answer of the Defendant, or in the alternative for an adverse inference jury instruction be given that negligence may be inferred from the Defendant's spoliation of video evidence be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
   February 28, 2022

         _____/s/_____
         ARLENE R. LINDSAY
         United States Magistrate Judge