**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
.............................................................................X
A.W.S., a minor, by and through his Parents
and individually KAYLA LOOKING HORSE,
and JONATHAN K. SMITH,

                     Plaintiffs,

    v.

SOUTHAMPTON UNION FREE SCHOOL
DISTRICT,

                    Defendant.
.............................................................................X

**MEMORANDUM AND ORDER**

19-CV-889 (GRB)(LGD)

**FILED**
**CLERK**

2:47 pm, Mar 10, 2023

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge**:

AWS, a minor, and his parents Kayla Looking Horse ("KLH") and Jonathan K. Smith ("JKS") bring this suit against the Southampton Union Free School District alleging AWS was wrongfully denied special education services after injuring himself on the school playground and was discriminated against for being a Shinnecock Indian.   Defendant moves for summary judgment.  For the reasons set forth below, defendant's motion is GRANTED.

*Facts*

As drawn from the undisputed assertions in the parties' Rule 56.1 Statements, and based upon the Court's review of the evidence submitted, the material undisputed facts include the following:

At all times relevant herein, AWS was a 1st grade elementary student at the Southampton Elementary School in Suffolk County, New York.  DE 111-18, Def. R. 56.1 Statement, ¶ 1.  As residents on the Shinnecock Indian Reservation do not pay local property taxes, education for Native American children is funded through the Native American Tuition Agreement ("NATA")

1

between the Southampton Union Free School District and the NYS Education Department.  DE 113-26, Pl. R. 56.1 Counterstatement, ¶ 90(a); DE 111-18, ¶ 90.  NATA requires the school district to educate Shinnecock children on the same basis as other students, and provides a Supplemental Service program with up to $85,000 in funding to enable Native American students to achieve at rates comparable to their counterparts.  DE 110-12, NATA Contract, App'x D, ¶¶ 1(a)-(b).  If an issue arises regarding the implementation of NATA, the parties are to follow a dispute resolution process that includes notifying the State's Native American Coordinator and then proceeding to informal mediation.  DE 110-12, NATA Contract, App'x D, ¶ 12.

On January 31, 2018, AWS had an accident on the school playground during recess.  DE 111-18, ¶ 129; DE 113-26, ¶ 129(h).  Later at home that day, AWS told his parents that he hurt his head on the fireman's pole.  DE 111-18, ¶ 148.  In February, AWS was diagnosed with a concussion.  DE 113-26, ¶¶ 129(k), 180(h), 181; DE 115-6, Ex. 22 - Medical Rpt.

On March 27, 2018, plaintiffs sent a letter informing the defendant, among other things, of "Illegal Racial Discrimination: …The fact that Principal Bottcher intentionally does not appoint a person to ensure protocol placement of the aides on the playground to ensure [AWS's] safety, and then denies the Parents the availability of special services post-Injury, establishes a pattern of illegal racial discrimination."  DE 113-26, ¶ 116(a).

In mid-April, plaintiffs wrote a letter requesting a § 504 Meeting to evaluate AWS's eligibility for a special education program.  DE 113-26, ¶ 90(l).  To prepare for the meeting, AWS's teacher prepared a Classroom Observation Form outlining AWS's academic performance, which determined that AWS was, overall, meeting grade level expectations.  DE 111-18, ¶ 102.  The school psychologist discussed the parents' § 504 rights before the meeting.  DE 111-18, ¶ 41.  The school also provided written notice of plaintiffs' § 504 rights.  DE 111-18, ¶ 42; DE 110-20 at 10–

11 (§ 504 rights notice).  Plaintiff KLH disputes this because she does not remember receiving documentation of the committee's decision.  DE 113-26, ¶¶ 42, 60.

At the § 504 meeting on April 30, 2018, it was determined that AWS had a physical or mental impairment due to a concussion, but that it did not substantially limit a major life activity. Thus, AWS was found ineligible for a § 504 Plan.  DE 111-18, ¶ 44.  According to KLH, the superintendent said at the meeting the denial was because "he's not significant enough with a brain injury" and "the funds could be allocated to somebody else" who "would benefit more," e.g., a student "who doesn't have a limb, or leukemia."  DE 113-26, ¶ 59.  A follow-up letter confirmed that AWS would not be given a § 504 plan because he did not meet the eligibility criteria to be considered a student with a disability that substantially limits one or more major life activities.  DE 111-18, ¶ 59.  JKS did not ask for a reconsideration of this decision.  DE 111-18, ¶ 59.  Plaintiffs also did not ask for a review or evaluation of AWS by the Committee on Special Education.  DE 111-18, ¶¶ 62-63.  Plaintiffs contest that reconsideration was futile, as their request for special education services had already been denied multiple times.  DE 113-26, ¶¶ 59, 109(b).  Plaintiffs also did not utilize NATA's procedures to raise a claim that the school did not comply with NATA. DE 111-18, ¶ 96.  Denise Merchant, a former school district employee who served as Special Education Director, was not aware of any claims of racial discrimination brought by Native American students during her employment with the school district, and never complained that Shinnecock Nation students were not being given Individualized Education Programs or receiving the § 504 referrals they should.  DE 111-18, ¶¶ 87-88; DE 110-1, Depo. Merchant at 140, 147.

In 2022, AWS's parents requested and received a § 504 plan for AWS at the Tuckahoe School District.  AWS is presently on a § 504 plan at that school.  DE 113-26, ¶ 73.

*Procedural History*

Plaintiffs instituted this action against the Southampton Union Free School District in February 2019.  DE 1, Compl.  In April 2022, the Court denied plaintiffs' motion to strike defendant's affirmative defenses and answer for alleged spoliation of video footage of AWS's accident on the playground.  *See A.W.S. v. Southampton Union Free Sch. Dist.*, No. 2:19-CV-889(DRH)(ARL), 2022 WL 1166422, at *1 (E.D.N.Y. Apr. 20, 2022).  In July 2022, the case was reassigned to the undersigned.  Electronic Order dated July 8, 2022.  Defendant now moves for summary judgment.  DE 109.

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Discussion*

Individuals with Disability Education Act ("IDEA") and Related Federal Claims

Plaintiffs allege that defendant violated § 504 of the 1973 Rehabilitation Act, the Individuals with Disability Education Act ("IDEA"), and the Americans with Disability Act ("ADA") by failing to appropriately test and assess AWS's eligibility for services under the act, failing to prepare and keep proper records, and failing to provide reasonable accommodations.  DE 1, Compl., Counts VII, VIII, and IX.

Before bringing a claim in federal court under IDEA, plaintiffs must first exhaust their administrative remedies:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42

4

U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the same action been brought under this subchapter.

20 U.S.C. § 1415(l).

Under IDEA, parents are "entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)). Parents may seek two tiers of administrative review, first before an impartial hearing officer who conducts the initial hearing, and then on appeal before a state review officer of the New York Education Department. *See C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 325 (E.D.N.Y. 2016) (citing *Cave*, 514 F.3d at 245). "[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002); *see Cave*, 514 F.3d at 245-49 (IDEA's administrative exhaustion requirement applied to claims under ADA, Rehabilitation Act, and § 1983). "[A] prayer for damages does not enable a plaintiff to 'sidestep the exhaustion requirement of the IDEA.'" *Id.* at 246 (quoting *Polera*, 288 F.3d at 488). It is undisputed that plaintiffs did not exhaust the administrative remedies available to them under IDEA before commencing this suit in federal court. Plaintiffs did not ask for a reconsideration of the committee's denial of § 504 services or ask for an evaluation of AWS by the Committee on Special Education. DE 111-18, ¶¶

59, 62-63.  Thus, the IDEA and related claims must be dismissed for failure to exhaust unless an exception applies.

Plaintiffs contend that reconsideration was futile because their request for special education services had already been denied multiple times prior, such as at a March 2018 meeting on the playground.  DE 113-26, ¶¶  59(b), 109(b).  Plaintiffs have not met their burden of showing that exhausting administrative remedies would have been futile.  "Exhaustion is futile when (i) plaintiffs challenge 'system-wide violation[s] of the IDEA's mandates or [ ] a district-wide policy of discrimination,' or (ii) defendants 'failed to implement services that were specified or otherwise clearly stated in an [Individualized Education Program].'"  *Calandrino on behalf of J.C. v. Farmingdale Union Free Sch. Dist*., No. CV-19-0443(SJF)(AYS), 2019 WL 7473457, at *3 (E.D.N.Y. Dec. 18, 2019), *report and recommendation adopted*, No. 19-CV-0443(SJF)(AYS), 2020 WL 42775 (E.D.N.Y. Jan. 3, 2020) (citations omitted).  Even after drawing all reasonable inferences in plaintiffs' favor, plaintiffs have not alleged facts that come close to proving systemic violations or a district-wide policy of discrimination.  To the contrary, the former Special Education Director testified that she was not aware of any claims of racial discrimination brought by Native American students during her employment there, and never complained that Shinnecock Nation students were deprived of needed Individualized Education Programs or § 504 referrals.  DE 111-18, ¶¶ 87-88; DE 110-1, Depo. Merchant at 140, 147.  Further, because no Individualized Education Program was formulated for AWS as a result of the § 504 meeting, the second exception to the exhaustion requirement for failure to implement is inapplicable as well.  For these reasons, the Court lacks subject matter jurisdiction over the claims arising under the Rehabilitation Act, the IDEA, and the ADA, and therefore they must be dismissed.  *See Cave*, 514 F.3d at 250; s*ee also C.K.*, 185 F. Supp. 3d at 326–31.

Plaintiffs' remaining federal claim is their allegation that defendant violated Title VI of the 1964 Federal Civil Rights Act by issuing an arbitrary denial of § 504 services, treating Native American students differently, and failing to investigate and correct plaintiffs' allegations of racial discrimination in their March 27, 2018 letter. DE 1, Count VI.[1]  Even if "plaintiffs' federal claims were . . . premised on statutes other than the IDEA, plaintiffs were essentially alleging that they were not provided services tailored to meet their special needs . . .." *Cave*, 514 F.3d at 247–48 (rejecting argument that discrimination claim is not subject to exhaustion rule).  Plaintiffs' discrimination claim under Title VI amounts to a reframing of their IDEA claim as one of racial discrimination, and therefore also fails for failure to exhaust administrative remedies available under IDEA.  *See Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995) (affirming dismissal of both disability and race discrimination claims of dyslexic student under Title VI for lack of subject matter jurisdiction due to failure to exhaust administrative procedures under IDEA).

Remaining State Law Claims

Plaintiffs' remaining state law claims are for negligence, breach of contract, and violation of the Freedom of Information Law ("FOIL").  *See* DE 1, Compl. (Counts I and II for failure to warn and provide adequate instruction); (Count III for failure to hire, train, and supervise qualified and competent staff); (Count IV for failure to provide prompt and appropriate post-injury care); (Count V for gross negligence); (Count XI for breach of NATA); (Count XII for violation of FOIL).  Given that plaintiffs' state law claims are legally and factually distinct from claims arising from the denial of the § 504 plan or any alleged discrimination, joinder of these state law claims with the IDEA and ADA claims was dubious at best.  *Cf. Schafer v. Hicksville Union Free Sch.*

---

[1] Plaintiffs withdrew their state law claim for discrimination under New York State's Dignity for All Students Act, Count X, because the law does not provide a private right of action.  DE 113-25 at 31 (citing *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 2018 NY Slip Op. 08467 (App. Div. 2d Dep't 2018)).

*Dist.*, No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *20 (E.D.N.Y. Mar. 31, 2011) (finding it a "dubious notion that a breach of contract action can arise out of an IEP dispute").  Even assuming joinder was proper, since no federal cause of action remains the Court declines to retain supplemental jurisdiction over the remaining state law claims in the interests of judicial economy. *See Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-00223(GRB)(VMS), 2021 WL 826168, at *4 (E.D.N.Y. Mar. 3, 2021).

*Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for defendant and close the case.

**SO ORDERED.**

Dated: March 10, 2023
       Central Islip, New York

       ___/s/ Gary R. Brown_____
       HON. GARY R. BROWN
       UNITED STATES DISTRICT JUDGE